UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE     )
EXTRADITION OF              )         MAG No. 12-65M
DYLAN RYAN JOHNSON   )         Magistrate Judge Maureen P. Kelly

## OPINION AND ORDER

**MAUREEN P. KELLY, United States Magistrate Judge.**

      Pending before the Court is the Complaint for Extradition [ECF No. 1] filed by the United States on behalf of the Government of Mexico. The United States seeks to extradite Dylan Ryan Johnson ("Johnson") for the aggravated homicide and rape of a 16 year old boy in the town of Empalme Escobedo, Guanajuato, Mexico, committed over nine years ago, on September 7, 2003. The Complaint alleges that extradition is warranted under the applicable Extradition Treaty between the United States of America and the United Mexican States, U.S.T. 5059 (TIAS 9656) (the "Extradition Treaty"), and that the totality of evidence presented by the Government of Mexico establishes probable cause to believe that Johnson committed the alleged offenses. Johnson contests his extradition, challenging the existence of probable cause that he committed the crimes for which he is charged, and the lapse of time between the alleged crimes and the presentation of the Formal Request for Extradition.

      This Court has carefully considered the relevant provisions of the Extradition Treaty in force between the United States and Mexico, the Formal Request for Extradition, the exhibits submitted by Mexico in support of the extradition request, the other written submissions of the parties, and the arguments made by counsel during the extradition hearing on August 3, 2012.

For the reasons that follow, the Court finds that there is competent evidence to sustain a finding of probable cause as to the criminal charges presented and that extradition is warranted.

I.     THE EXTRADITION PROCESS AND APPLICABLE LEGAL STANDARD

Extradition is a diplomatic process initiated by a request from the nation seeking extradition submitted to the United States Department of State. If a foreign country files a sworn complaint charging an individual found within the jurisdiction of the United States of a crime punishable by imprisonment of more than one year, and if there is an extradition treaty between the United States and the requesting foreign government, then the authority of a magistrate judge serving as an extradition judicial officer is limited to determining an individual's eligibility to be extradited. 18 U.S.C. § 3184. This is done by ascertaining whether (1) the crime is an extraditable offense under the subject treaty; and (2) whether there is probable cause to sustain the charge. Cornejo-Barreto v. Seifert, 218 F.3d 1004, 1009 (9th Cir. 2000). Upon such a finding, the judge is required to certify to the Secretary of State that extradition is appropriate. The judicial officer "has no discretionary decision to make," for it is the executive branch, through the Secretary of State, that controls the ultimate decision regarding whether the charged individual should be surrendered to the requesting country. 18 U.S.C. §§ 3184, 3186. However, should the magistrate judge determine that "the offense charged is not within a treaty's terms or finds an absence of probable cause, the magistrate cannot certify the matter to the Secretary of State for extradition." United States v. Nolan, 651 F. Supp.2d 784 ,790 (N.D. Ill. 2009), quoting Eain v. Wilkes, 641 F.2d 504, 508 (7th Cir. 1981).

"It is well settled that the terms of an extradition treaty should be liberally construed so as to effect the intention of the parties to secure the open and reciprocal surrender of fugitives to be tried for extraditable offenses." In re Extradition of Rodriguez Ortiz, 444 F. Supp.2d 876, 883

(N.D. Ill. 2006) (citing Factor v. Laubenheimer, 290 U.S. 276, 293-94 (1933)). The process for extradition is set forth by statute and the relevant treaty. Here, the Treaty between the United States and Mexico provides that the parties mutually agree to extradite fugitives who are charged with crimes in one country and subsequently found within the territory of the other. Extradition Treaty, U.S.-Mex., art.1, May 4, 1978, 31 U.S.T. 5059.

The required documents for extradition of a fugitive not yet convicted in the foreign country but located within the United States include a certified copy of the warrant for the fugitive's arrest issued by a judge of the requesting party, and "[e]vidence which, in accordance with the laws of the requested Party, would justify the apprehension and commitment for trial of the person sought if the offense had been committed there." Id. Documentary evidence proffered by the Mexican government shall be admissible in evidence if it is properly authenticated and certified by the principal consular officer of the United States in Mexico. Id., 18 U.S.C. § 3190. Appropriate documentation typically includes authenticated statements, see, Sainez v. Venables, 588 F.3d 713, 717 (9th Cir. 2009) (certification of extradition based on sworn statements); or, pursuant to 18 U.S.C. § 3190, may include "[d]epositions, warrants, or other papers" if "properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped."

The individual whose extradition is sought has limited evidentiary rights. He or she has no right to cross-examine witnesses, and generally may present only "evidence that explains away or completely obliterates probable cause;" "evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible." Barapind v. Enomoto, 400 F.3d 744, 749 (9th Cir. 2005) (citation and quotation marks omitted) (quoting Mainero v. Gregg, 164 F.3d 1199, 1207 n. 7 (9th Cir. 1999)). Thus, the individual facing extradition is limited to presenting

"'reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause.'" Koskotas v. Roche, 931 F.2d 169, 175 (1st Cir. 1991) (citation omitted).

The judicial officer, after receiving the evidence, makes no determination of guilt or innocence, for "guilt remains to be determined in the courts of the demanding country." Sainez v. Venables, 588 F.3d at 717. Where the judge determines that the evidence is sufficient to find probable cause and warrant extradition, the judge then certifies to the Secretary of State that the fugitive may be detained and surrendered to the requesting country and forwards all the evidence to the Secretary of State. 18 U.S.C. § 3184. If the fugitive was released on bail from provisional arrest, the judge must also issue a warrant for the commitment of the fugitive until surrender to Mexico can be made. 18 U.S.C. § 3184. "The ultimate decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct foreign affairs." Esobedo v. United States, 623 F.2d 1098 (5th Cir. 1980). Thus, the executive branch, through the Secretary of State, is the final arbiter of whether an individual will be detained in the United States and delivered to the requesting foreign county. See, 18 U.S.C. § 3186. If extradition is granted, surrender shall then be made at such time and place as determined according to the law of the required country. Extradition Treaty, U.S.-Mex., art 3, May 4, 1978, 31 U.S.T. 5059.

II. BACKGROUND

A. Procedural History

On July 8, 2011,[1] Arturo Sarukhan, the Mexican Ambassador to the United States, forwarded a Formal Request for International Extradition Purposes to the United States Secretary

---

[1] As indicated by Alexis R. Blane, an Attorney Advisor in the Officer of the Legal Adviser for the Department of States, Washington, D.C., the unofficial translation of Diplomatic Note No. 04484 containing the Formal Request

4

of State. The Formal Request served to notify Secretary Hilary Rodham Clinton that Dylan Ryan Johnson, a fugitive wanted in Mexico for the crimes of Aggravated Homicide and Rape, had been located by the U.S. Marshal's Service in the Commonwealth of Pennsylvania. The Formal Request was predicated upon an arrest warrant issued on December 8, 2003, as part of criminal case number 89/2003, by the Judge of First Instance for Civil and Criminal Matters of the Judicial District of Comonfort, Guanajuato. [ECF No. 16]. On May 2, 2011, Graciela Lopez Cruz, the Agent of the Office of the Federal Public Prosecutor assigned to the General Division of Extraditions, certified that the arrest warrant was sufficient under applicable Mexican law to support a formal request for extradition of Johnson. [Affidavit in Support of Extradition, ECF No.18]. In accordance with 18 U.S.C. § 3190, the affidavit and accompanying documents were submitted by the Government of Mexico to John D. Feeley, Charge D'Affairs, of the United States Embassy in Mexico, who, on June 7, 2011, certified the documentation as authentic.

Pursuant to the Formal Request, on February 2, 2012, the United States filed a Complaint for Extradition [ECF No. 1], as well as a Motion to Detain Fugitive [ECF No. 9]. In conjunction with the filing of the Complaint, Johnson was arrested at his home in Greene County, Pennsylvania. Upon consideration of the Motion to Detain Fugitive and the Memorandum of Law filed in support thereof, on February 8, 2012, the Court entered an Order granting the motion, and indicated that Johnson would be permitted to present evidence of special circumstances as to detention, if warranted or necessary. [ECF No. 10]. Johnson subsequently filed a Motion to Revoke Order of Detention, seeking his release pending the entry of a final order for extradition from the Secretary of State. [ECF No. 26]. A hearing as to both the Formal Request for Extradition and the Motion to Revoke Order of Detention occurred on August 3,

---

for Extradition, contains a scrivener's error regarding the date of the Diplomatic Note as written by Ambassador Sarukhan. The correct date of the Diplomatic Note, as reflected in the official Spanish version, is July 8, 2011, not July 8, 2010. [ECF No. 17].

2012, with the presentation of argument by counsel for both the United States and Johnson. Following the hearing, counsel for Johnson and the United States were permitted to and filed post-hearing memoranda. On September 7, 2012, this Court issued an Opinion and Order denying the Motion to Release on Bail. [ECF No. 37].

**B. Evidence Presented**

As set forth in the Formal Request for Extradition, and the Complaint filed on behalf of the United States in aid of Johnson's extradition, Johnson is accused of raping and strangling to death a 16 year old boy identified as Hilario Garcia Rosales on September 7, 2003. The crimes are alleged to have taken place at the Hotel Villa Empalme, in the town of Empalme Escobedo, Guanajuato, Mexico.

The evidence submitted in support of the Formal Request for Extradition indicates that at approximately 1:15 a.m. on September 7, 2003, an English-speaking man fitting Johnson's description and driving a green truck entered the hotel and asked for a room. The hotel owner, J. Esteban Carlos Garfias Cambron ("Garfias Cambron"), indicated that the man had been drinking, but "could still control himself." The guest paid cash and was assigned Room 23. After leaving the lobby, the guest was seen signaling to another man and both men entered Room 23. According to Garfias Cambron's wife, Sofia Garcia Garcia ("Garcia Garcia"), the hotel is a "couples" hotel, and guests typically stay from between 15 minutes up to a day, and pay upfront. While the desk clerk keeps a record of vehicle descriptions and license plates, if any, guest names are not recorded.

Garcia Garcia was present when a *"gringo"* arrived and requested a room. She realized the guest was with another man when she saw him signal to another individual and watched them both enter Room 23. Garcia Garcia went to bed around 2:00 a.m but Garcia Garcia's daughter,

Erika Teresa Garfias Garcia ("Garfias Garcia"), remained on duty at the front desk until Jose Vasquez Leon ("Vasquez"), another employee, arrived to work for the remainder of the night.

Garfias Garcia was in the hotel lobby when the guest requested a room and she observed him signal to another man as they both entered Room 23. Shortly after her parents went to bed, the guest returned to the reception area and indicated that he was leaving, but his friend was staying for the night. Vasquez watched the guest, who he later identified as Johnson, climb into a green truck and signal for Vasquez to open the gate so he could drive out. Vasquez watched as the guest quickly drove away.

Approximately eleven hours later, at 1:30 p.m., the hotel maid reported to Garcia Garcia that although she had knocked on the door of Room 23 several times, no one answered. Garcia Garcia and the maid both went to the room, knocked on the door, and receiving no response, used the master key to enter the room. Garcia Garcia observed a man lying on the floor, face up, with a blanket up to his chest. She did not see any signs of violence and assumed he was sleeping. She closed the door went to lunch. Upon returning from lunch at approximately 4:00 p.m., the maid reported that the person in Room 23 was still not awake. At this point, Garcia Garcia called the police. Officer Nabor Sierra Juanjose responded to the call at approximately 4:50 p.m., and upon entering the room, found the victim dead, with blood on his mouth, on a pillow and on the walls of the room. He reported his findings to the appropriate officials, including the Public Prosecutor's Office and Forensic Services.

A forensic expert examined the hotel room and found bloodstains on the interior lock of the door, on the wall, a corner of a television, a pillow and the carpet. After conducting an autopsy, it was determined that the cause of death was asphyxia by strangulation with a weapon and, based upon findings of bleeding tears and bruising in the rectum, it was further determined

7

that the male victim had been raped before his death. Additionally, contusions were found in and around the victim's left eye. Toxicology screening revealed traces of cocaine in the victim's kidney and a blood alcohol of .14%, which was reported to be sufficient to cause confusion and lack of comprehension.

Two days later, on September 9, 2003, Teodora Rosales Garcia and Alfredo Garcia Garcia spoke with police after hearing that a boy named Hilario was at the morgue. Their son Hilario had not returned home from a party he attended with his cousin on the evening of September 6, 2003, and while it was not unusual for him to stay out for a few days, they were concerned that he had not yet come home. Rosales Garcia and Alfredo Garcia Garcia identified the victim as their son and confirmed for police that Hilario worked for a young man identified as *"el gringo"* who drove a green truck. According to his parents, *"el gringo"* hired the victim as a bricklayer a few months earlier to help build a house on a nearby ranch. Hilario also spent time with the *"el gringo,"* driving around in his truck, and drinking and dancing at parties with him. Hilario told his mother that *"el gingo"* gave him some clothing and was going to lend Hilario money and take him to the United States.

Hilario's cousin, Jose Antonio Garcia Soto ("Soto"), was interviewed by the Public Prosecutor and confirmed that on Saturday, September 6, 2003, he accompanied his cousin to a dance in Rancho el Potrero. Both he and Hilario drank beer and danced with women attending the party. Soto recalled seeing *"el gringo"* at the party at around 10:00 p.m. Soto identified *"el gringo"* as the same man Hilario worked for, and stated that he often saw Hilario driving with *"el gringo"* in a green truck. In addition, he knew that Hilario worked for *"el gringo"* on his house and cared for his animals when *"el gringo"* travelled back to the United States. Soto did not see

either "*el gringo*" or his cousin after 10:00 p.m., although the party continued until about 2:00 a.m.

Johnson's neighbor, Alfredo Mendoza Palacios ("Mendoza"), informed police that on September 11, 2003, "*el gringo*" approached him for a ride to the Celaya bus station. Mendoza also knew "*el gringo*" as "Dilan," and described him as about 20 years old, living nearby in a house Dilan recently built. Dilan paid Mendoza for gas, and Mendoza dropped him at the bus station at approximately 9:00 p.m. Dilan carried a backpack and did not indicate when he would return.

On September 12, 2003, as part of the investigation, Pedro Gutierriz Galvan, the Public Prosecutor for the City of Comonfort, and MA. Consuelo Hernandez Martinez, the Public Clerk, went to "*el gringo's*" house and located a green truck which matched the description of the truck seen by witnesses at the Hotel Villa Empalme. As summarized by the statement prepared by both officials:

> Outside the rooms "[*el gringo's*" house] there is a motor vehicle, pick-up truck, Chevrolet, with license plates DY72HJ of a Foreign country, the truck is green and it is of the type called a 4x4 in good conditions, it has light smoked window and in accordance to the deposition of the FATHER of the deceased this was the vehicle in which his son HILARIA GARCIA ROSALES used to ride very often, and this truck belongs to the gringo and one it has been inspected in a detailed manner, it is the same truck with the characteristics provided by the eyewitnesses who identified the police sketch part of this investigation as well as the photographs in which the gringo appears. The name of the gringo is visible in the passport copy annexed to this investigation and corresponds to JOHNSON DYLAN RYAN being the same person who left the Hotel Villa Empalme the day when the facts took place.…

Prior to the issuance of the arrest warrant, the passport photo and sketch were shown to the hotel proprietors, who confirmed that Johnson was the individual who arrived in a green truck and stayed at the hotel in Room 23 in the early hours of September 7, 2003. [ECF No. 20, pp. 20, 27-

9

29]. While there is no explanation for the three month delay associated with the criminal investigation, a warrant for Johnson's arrest was issued on December 9, 2003.

## III. DISCUSSION

Consistent with 18 U.S.C. § 3184 and the relevant Extradition Treaty, a federal court will order extradition, if : "(1) the Court has subject matter jurisdiction over the proceedings (and, concomitantly, the presiding judicial officer adjudicating the proceeding is authorized to conduct the proceedings); (2) the Court has personal jurisdiction over the defendant; (3) the person before the Court is the person identified or named in the Government's extradition request; (4) an in-force and in-effect treaty exists between the requesting state and the United States; (5) the alleged crime or crimes are covered by that Treaty; and (6) the competent evidence put forward by the Government supports a finding as to probable cause for the crime or crimes for which extradition is sought."

### A. Court's Jurisdiction

The parties do not contest this Court's subject matter jurisdiction over the extradition request or this Court's personal jurisdiction over the defendant, Dylan Johnson. Further, with regard to the Court's authorization to conduct the proceedings, "[a] magistrate judge may conduct extradition proceedings if authorized to do so by a court of the United States." Hoxha v. Levi, 371 F.Supp.2d 651, 655 (E.D. Pa. 2005). This Court's authority to conduct extradition proceedings is set forth at Local Rule 72 A.4, which expressly authorizes magistrate judges to conduct extradition proceedings in accordance with 18 U.S.C. § 3184.

### B. Existence of an Extradition Treaty

A valid extradition treaty was entered into between the United States and Mexico on May 4, 1978. See, 31 U.S.T. 5059; TIAS 9656; and see, Declaration of Alexis R. Blaine, dated

January 11, 2013, ECF No. 17. The Extradition Treaty remains in full force and effect, as it has been from the date of the underlying offense for which extradition is sought, through the date of this Order. Pursuant to the terms of the Extradition Treaty, extradition is appropriate where the crime charged is punishable under the laws of both Mexico and the United States with a maximum prison sentence of no less than one year. 31 U.S.T. 5059 art. 1, ¶ 2. The Extradition Treaty includes murder and rape as extraditable crimes, and under the laws Mexico and the United States, both crimes are punishable with a maximum sentence in excess of one year. 31 U.S.T. 5059, art. 2; Appendix 1, 5; and see, 18 U.S.C. § 1111 (a) (Murder in the First Degree); 18 U.S.C. § 2245 (Aggravated Sexual Abuse Resulting in Death); United States Sentencing Commission, Guidelines Manual § 2A1.1 (imposing life imprisonment); Codigo Penal para el Estado de Guanajuato, Periodico Official, Nov. 2, 2001, art. 140 (sentence for aggravated murder ranges from twenty-five to thirty-five years of imprisonment); art. 180 (sentence for rape ranges from eight to fifteen years). Accordingly, the crimes for which Johnson is charged are covered by the extradition treaty and meet the required standard of dual criminality.

    **C.**    **Probable Cause as to Each Charge**

The standard for probable cause is "whether the Government offered evidence to 'support a reasonable belief that [the defendant] was guilty of the crime charged.' Sidali v. INS, 107 F.3d 191, 199 (3d Cir. 1997) (citation omitted). In other words, the question is whether the evidence presented was such 'to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.' Id. (citation omitted). The standard is the same as for a federal preliminary hearing; that is, a magistrate judge must 'determine whether there is competent evidence to justify holding the accused to await trial,... not ... whether the

evidence is sufficient to justify a conviction.' Id. (citation omitted).'" Aquino v. Plousis, 414 F. App'x 504, 505 (3d Cir. 2011).

"It is not necessary in extradition proceedings that the evidence against the respondent be such as to convince the committing judge or magistrate of his guilt beyond a reasonable doubt, but only such as to afford reasonable ground to believe that the accused is guilty of the offense charged." Sidali v. I.N.S., 107 F.3d 191, 199 (3d Cir. 1997), quoting, United States ex rel. Lo Pizzo v. Mathues, 36 F.2d 565, 568 (3d Cir. 1929). In determining the existence of probable cause in an extradition proceeding, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence are not applicable. In re Extradition of Aquino, 697 F. Supp.2d 586, 597 (D.N.J. 2010), citing Fed. R. Crim. P. 54(b)(5); Fed. R. Evid. 1101(d)(3). Accordingly, hearsay evidence is admissible. See, Hoxha v. Levi, 465 F.3d 554, 561 (3d Cir. 2006), citing In re A.M., 34 F.3d 153, 161 (3d Cir. 1994).

Johnson challenges the sufficiency of probable cause based upon (1) the possibility that the victim had not been raped, but sustained his injuries in the course of consensual sex; (2) the "circumstantial" nature of the evidence that Johnson had committed the murder; and, (3) an unreliable photo array which occurred years after the issuance of his arrest warrant.

Having reviewed all of the materials submitted by the United States and Johnson, and having conducted a hearing to consider the evidence of criminality presented by Mexico as well as argument by legal counsel, this Court believes that the United States has met its burden in providing sufficient evidence to establish probable cause as to both the charge for aggravated murder and the charge for rape. As more fully set forth *supra*, there is sufficient evidence identifying Johnson as "*el gringo*," and that Johnson knew, employed and spent time with the victim. There is also evidence placing Johnson and the victim together at a party in the hours

immediately prior to the crime, as well as evidence connecting both Johnson and his green truck to the Hotel Villa Empalme on the night of the murder, and the victim's connection to both. This evidence is sufficient to support a finding as to probable cause that Johnson committed the murder for which extradition is sought.[2]

This Court finds that the photo array that was shown to witnesses almost six years after the crimes at issue is problematic at best. The array is highly suggestive because it contains photographs of six men – only one of the six is a "gringo" without a mustache. As a result, the delayed photo array is disregarded in its entirety by this Court. However, other reliable evidence exists connecting Johnson to the victim and the crimes for which he is charged. As summarized in the arrest warrant issued on December 9, 2003, using photographs of Johnson's passport, as well as his Ohio driver's identification card, Johnson was identified as the individual who reserved the room in which the victim was found. Both Garcia Garcia and Garfias Cambrom identified Johnson's green truck as the vehicle "the gringo was driving on the date of the crime." [ECF No. 20, pp. 27-28.] Johnson was described as hurrying from the scene, indicating to hotel staff that the victim was sleeping at the hotel for the evening. No one else was seen entering or leaving the room from the time Johnson fled until the following afternoon, when the maid checked to see if the room was still occupied.

The evidence establishing probable cause for rape is based upon the existence of extensive tearing of the victim's anus, coupled with other indications of violence both on the victim and at the crime scene. [ECF No. 20, p. 26.] This evidence, with evidence that the victim was strangled to death while being penetrated "through the anus" (id.) is sufficient to support a

---

[2] This Court's finding of probable cause is limited to the threshold determination of sufficiency of the evidence for extradition, and it should not be construed in any way as a determination of whether or not there is sufficient evidence to convict Johnson of the crimes charged. The Court makes no determination as to the innocence or guilt of Johnson. Sidali v. I.N.S., 107 F.3d 191, 199 (3d Cir. 1997).

reasonable belief that a forcible rape occurred, resulting in murder and that Johnson was the perpetrator. See, e.g., Sidali at 200, quoting, Austin v. Healey, 5 F.3d 598, 605 (2d Cir. 1993).

### D. Statute of Limitations

Given the delay in seeking Johnson's extradition, it is appropriate to consider the applicability of the Article 7 of the United States-Mexico Extradition Treaty. Article 7 addresses the effect of a "Lapse of Time" between the crime and extradition, and provides:

> Extradition shall not be granted when the prosecution of the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the laws of the requested or requested Party.

31 U.S.T. 5059, art. 7. "In determining what United States statute of limitations is applicable, this Court looks to the substantive offense under United States law which is most closely analogous to the charged offenses, and applies the statute of limitations applicable to that offense." Sainez v. Venables, 588 F.3d 713, 716 (9th Cir. 2009), *quoting*, In re Extradition of Suarez-Mason, 694 F. Supp. 676, 686 (N.D. Cal.1988), *as amended*; see also Clarey v. Gregg, 138 F.3d 764, 767 (9th Cir. 1998) ("The object of Article 7 of the Treaty is to preclude extradition of a person whose prosecution in the United States would offend our national statute of limitations if he had committed his criminal conduct here."). Because Johnson has been charged with the equivalent of aggravated homicide, 18 U.S.C. § 1111 and 18 U.S.C. § 2245, which is punishable by death or life imprisonment, there is no applicable United States statute of limitations. See, Skaftouros v. United States, 667 F.3d 144, 149-50 (2d Cir. 2011) ("[t]here is no applicable U.S. statute of limitations in this case because the crime charged is a capital offense.

See 18 U.S.C. § 3281 ("An indictment for any offense punishable by death may be found at any time without limitation.")).[3]

Furthermore, in the event the corresponding crimes are not capital offenses, the timing of the issuance of the arrest warrant is sufficient to toll the applicable statute of limitations. At least two United States Courts of Appeals have specifically referenced Section 476 of the Restatement (Third) of Foreign Relations Law, to determine the timeliness of extradition based upon the date of the issuance of an arrest warrant. Sainez v. Venables, 588 F.3d 713, 717 (9th Cir. 2009); Jhirad v. Ferrandina, 536 F.2d 478, 480 (2d Cir. 1976). Section 476 provides:

> For purposes of applying statutes of limitations to requests for extradition … the period is generally calculated from the time of the alleged commission of the offense to the time of the warrant, arrest, indictment, or similar step in the requesting state, or of the filing of the request for extradition, which occurs first…

Restatement (Third) of Foreign Relations Law, § 476, cmt. e (1987).

In Sainez, the United States Court of Appeals for the Ninth Circuit rejected an argument that a six year delay between the issuance of an arrest warrant and the commencement of extradition precluded extradition. Sainez v. Venables, 588 F.3d at 717. The Court determined that the defendant's charges were most closely analogous to 18 U.S.C. §§ 1111 and 1112 (murder and manslaughter). The Court then examined the limitations period for the lesser of the two crimes and observed that under 18 U.S.C. § 3282, the period of limitations for a non-capital offense requires that an indictment or information be instituted within five years after the offense was committed. The Court held that as a matter of comity, the issuance of an arrest warrant within five months of the commission of the crime was sufficient:

---

[3] Skaftouros v. U.S., 667 F.3d at 150, citing, United States v. Payne, 591 F.3d 46, 59 (2d Cir. 2010) ("An offense 'punishable by death,' within the meaning of [18 U.S.C.] § 3281, is one for which the statute authorizes death as a punishment, regardless of whether the death penalty is sought by the prosecution or ultimately found appropriate by the factfinder or the court."). Therefore, pursuant to § 3281, there is no applicable U.S. statute of limitations to be applied in this case.

> Crotte's argument that the Mexican arrest warrant did not toll the statute of limitations because it is in no way analogous to a United States indictment lacks merit. We do not reach this conclusion by attempting to analogize a Mexican arrest warrant to an American indictment. Rather, we reach this conclusion by adhering to our established approach of giving credence to foreign proceedings. Indeed, we have declined to rule on the procedural requirements of foreign law out of respect for other nations' sovereignty "and because we recognize the chance of erroneous interpretation is much greater when we try to construe the law of a country whose legal system is not based on common law principles." Emami v. United States Dist. Court, 834 F.2d 1444, 1449 (9th Cir.1987) (citation omitted). See also Theron v. United States Marshal, 832 F.2d 492, 496, 499-500 (9th Cir.1987), *abrogated on other grounds by* United States v. Wells, 519 U.S. 482, 117 S. Ct. 921, 137 L.Ed.2d 107 (1997) ("[I]t would be inappropriate to engage in such an inquiry into the formal procedure a country uses in instituting prosecution.") (citation omitted).
>
> Giving credence to the arrest warrant issued by Mexican authorities, the five-month period between the date the homicide occurred and the issuing date of the Mexican arrest warrant was well within the five-year limitations period of section 3282, rendering the extradition on the homicide charge timely. In short, Crotte's extradition was not barred by the applicable statute of limitations.

Sainez v. Venables, at 717. Because Johnson's arrest warrant was issued within four months of the commission of the crime, the statute of limitations is tolled and Johnson's extradition is unaffected by the laws of the United States.

Article 7 of the Treaty also requires examination of Mexico's applicable statute of limitations. The Court has been provided with a copy of the August 3, 2009, Opinion of Carlos Alberto Cuellar Ornelas, Provisional Judge for Criminal Matters for Comonfort, Guanajuota, in support of the Formal Request for Extradition. Judge Cuellar Ornelas, with citation to applicable statutory and case law authority, concludes that the relevant statute of limitations for Aggravated Homicide as charged against Dylan Ryan Johnson, will not expire until March 8, 2033. Accordingly, neither the requesting nor the requestor's applicable statute of limitations bar Johnson's extradition under the Treaty.

## IV. CONCLUSION

Pursuant to 18 U.S.C. § 3184, the undersigned certifies to the United States Secretary of State that Dylan Ryan Johnson has been charged with the crimes of Aggravated Homicide and Rape by the United Mexican States, that the crime is an extraditable offense pursuant to the Extradition Treaty between the United States and Mexico, and that sufficient evidence has been presented to sustain the charges under the provisions of the treaty.

Dated: October 17, 2012

BY THE COURT,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record via CM/ECF